CHARLES E. COOK, Executor, Appellant, v. B. R. COOK et al.,
Appellees.

GIFTS:  Inter Vivos—Evidence—Sufficiency.  Evidence tending to
show a gift by a parent to a son of the son's notes to the
parent reviewed, and, while presenting a difficult problem, *held*,
in view of the holding of the trial court, sufficient to establish
the gift.

*Appeal from Dallas District Court.*—J. H. APPLEGATE,
Judge.

DECEMBER 18, 1917.

SUIT in equity to establish a vendor's lien upon certain
real estate for the amount of certain notes given for the
purchase money, and to recover judgment on such notes as

are due, the notes, however, not being in the possession of the executor. The answer was, in effect, a general denial. The real issue between the parties, concealed in their pleadings, proved to be the question of whether the notes sued on had been surrendered by the decedent in his lifetime to the defendant as a gift. Five notes of $1,000 each were involved. After trial to the court, judgment was rendered for the plaintiff upon one of the notes, and his petition was dismissed as to the others. The plaintiff appealed, and the defendant took a cross appeal.—*Affirmed.*

*S. ·G. Van Auken, White & Clarke,* and *Hunn & Jones,* for appellant.

*E. W. Dingwell* and *Dale & Harvison,* for appellees.

EVANS, J.—The plaintiff and defendant are brothers, though not brotherly. They are the sons of William Cook, who died in December, 1915. In April, 1913, the father had conveyed to the defendant, known in the record as Burt, his last tract of ground, consisting of 60 acres, for a consideration of $6,000, which was considerably less than its value. He took in payment ·therefor six notes of $1,000 each. The first of these notes was transferred by the father to a bank, and was held by such bank at the time of his decease. The other five notes are those in controversy. No part of these notes has ever been paid. It is the claim of the defendant that, on the 6th day of November, 1915, the father brought the notes and handed them to him, the defendant, saying: "This will be your Christmas present." The defendant accepted them with a reasonable degree of avidity, and perhaps some gratitude, though unexpressed. A few hours later, he exhibited them to his wife, and then burned them up. It goes without saying that such a story must needs be well proved in order to be accepted. The plaintiff elected to examine the defendant fully as to the alleged personal transaction between him and his father. His contention, therefore, has his direct evidence in its sup-

port. There are circumstances which put a strain upon its credibility. It appears that, in 1907, the father divided the greater part of his property among his five children, giving to each of them the equivalent of 100 acres of land. He retained 100 acres for himself. It was agreed by the children that they would bear equally the support of the father and mother for the rest of their lives. In 1911, the son Charles bought 40 acres from the father for a consideration of $3,000, giving his notes therefor. These had been paid prior to the death of the father, as alleged by the plaintiff. In 1912, the mother died. The remaining 60 acres of ground was the tract sold to Burt in 1913. The father boarded with one child and then with another, and does not appear to have been over-welcome anywhere. An account of his dates appears to have been carefully kept, and when his time was up, the next child was notified of his turn. The notes in controversy, with perhaps a note or two against Charles, constituted practically all of the father's remaining property. In 1913, he had made his will. At that time, two of his sons had died. He provided therein that $800 should first be paid to Charles, to equalize his benefits with those of Burt, and that the rest of his property should be divided into four equal parts, one to each of his three living children, and the other to the children of one deceased son. He was eighty-four years old when he died, his death resulting from a very short illness. He had been a man of affairs, self-reliant and independent in judgment, and he so continued in a marked degree to the end. . During the lifetime of the father, both Charles and Burt were suspicious and watchful of each other, lest one or the other gain some advantage in connection with their outstanding notes. Charles at least had communicated his suspicions confidentially to his father, and had induced the father to remove Burt's notes from the box in the bank, where he usually

kept them, to a box in another bank. This occurred on February 10, 1915. Burt never knew that this had been done, and this circumstance has become one of considerable corroborative importance in favor of the defendant. Notwithstanding the unfavorable circumstances here noted, the defendant's testimony has considerable corroboration. His story involves considerable circumstance and detail, which could not be easily fabricated. His story is free from any marked inconsistencies, notwithstanding a very thorough examination. It has the corroboration of the testimony of two or three disinterested witnesses, to whom the fact of the gift was stated in a general way by the father, shortly after it was done. The father had made his home at Burt's to a greater extent than at any other place. Burt had suffered the loss of the greater part of his right hand, which fact had given the father some concern. The case is one in which it is very difficult to reach a satisfactory conclusion upon the evidence, and has caused us much hesitancy. The natural impulse favors equality among the children. On the other hand, the right of the decedent to do as he would with his own is paramount, and the helm must be held to that point. The issues tried are wholly such as could have been tried on the law side of the court. The case was heard upon oral evidence. The trial judge filed a written opinion, giving his reasons for his finding of the facts. We are disposed to give his finding a very considerable weight. That the father went to the bank where Burt's notes were kept, and had access thereto on November 6th, is proved by disinterested witnesses. This was the bank to which he had transferred Burt's notes for safe-keeping in the February previous. It was not the bank at which he ordinarily did his business. He was a director in the other bank of the town. He had no other business in the bank on such date except to gain access to the box where Burt's notes were kept. It is certain that Burt did not take the notes out of

his father's box at this bank. We are convinced also that the father took the notes out of the bank on November 6th. There is little room to doubt that Burt obtained possession of these notes sometime later. He must have obtained the same before November 20th. On that date, he and his wife left for California, where they remained until the latter part of December. Being there advised of their father's fatal illness, they hurried home, and arrived a few hours before the father's death. His death occurred at the home of his daughter, at Valley Junction. If Burt had received the possession of the notes from his father by force or stealth, a large opportunity was left open for the father to disclose such fact. He had access to his other children and to his grandchildren, and did visit with them while Burt was in California. It is possible, of course, that they were taken by stealth, and that their absence was not discovered by the father. But in view of his careful business methods, and of the fact that he always kept the notes, not on his person, but in a safety deposit box in the bank, it is very improbable that he would have failed to discover the loss of the paper.

Though the result is not to our liking, in that it establishes great inequality in the distribution of this estate, contrary to the former and long-continued purpose of the father, yet we think it must be said that the weight of the evidence is with the defendant on the main appeal. This being so, we are not permitted to have any further concern on the subject.

As to the cross appeal, involving one note upon which judgment was entered against the defendant, the defendant's evidence in support of the gift was materially qualified, and was, therefore, less conclusive. The judgment below will be affirmed on both appeals.—*Affirmed*.

GAYNOR, C. J., LADD and SALINGER, JJ., concur.